**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MACK CHAMBERS,

Plaintiff,

v. Case No. 8:20-cv-1787-JRK

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

Defendant.
_________________________________/

## OPINION AND ORDER[2]

## I. Status

Mack Chambers ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of depression and bipolar disorder. See Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed January 28, 2021, at 96-97, 108, 313.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed January 28, 2021; Reference Order (Doc. No. 12), entered January 28, 2021.

On January 12, 2017, Plaintiff filed an application for DIB, alleging a disability onset date of January 1, 2013. Tr. at 256-57.[3] The alleged disability onset date was later amended to May 16, 2013, Tr. at 61-62, and still later to September 8, 2014, Tr. at 35-36, 301. The application was denied initially, Tr. at 94, 95, 96-106, 120-23, and upon reconsideration, Tr. at 107-17, 118, 119, 125-29.

On September 16, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and Plaintiff's wife. See Tr. at 56-93. The ALJ decided during the hearing to order a psychological consultative examination and to continue the hearing. Tr. at 91-92. The ALJ then held a supplemental hearing on February 3, 2020, during which Plaintiff, who was still represented by counsel, appeared but did not substantively testify; and during which Plaintiff's wife and a vocational expert ("VE") testified. Tr. at 33-54. On March 3, 2020, the ALJ issued a Decision finding Plaintiff not disabled through June 30, 2019, the date Plaintiff was last insured for DIB (the "DLI"). See Tr. at 15-26.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council, see Tr. at 253-55, and submitted additional evidence in the form of a

---

[3] Although actually completed on January 12, 2017, see Tr. at 256, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as January 11, 2017, see, e.g., Tr. at 96, 107.

brief authored by Plaintiff's counsel, Tr. at 4-5 (Appeals Council Order and exhibit list), 393-96 (brief). On June 29, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On August 2, 2020, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes two arguments: 1) the ALJ did not adequately consider his subjective complaints about how his impairments affect him, particularly because the ALJ failed in the written Decision to consider the testimony of Plaintiff's wife; and 2) the ALJ's assigned residual functional capacity ("RFC") and hypothetical to the VE are not supported by substantial evidence. Joint Memorandum (Doc. No. 26; "Joint Memo"), filed November 9, 2021, at 20-27, 32-37. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of Plaintiff's subjective complaints of how his impairments affect him.

On remand, reevaluation of this matter may impact the Administration's consideration of Plaintiff's RFC and the hypothetical to the VE. For this reason, the Court need not address Plaintiff's argument in this regard. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to

address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 17-26. At step one,

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his amended alleged onset date, September 8, 2014, through his [DLI] of June 30, 2019." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that through the DLI, Plaintiff "had the following severe impairments: depression, anxiety and post-traumatic stress disorder." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ found that through the DLI, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 19 (emphasis and citation omitted).

The ALJ determined that Plaintiff had the following RFC through the DLI:

> [Plaintiff could] perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff could] perform only simple, routine, and repetitive tasks. [Plaintiff could] only tolerate occasional interaction with others. [Plaintiff could not] perform fast-paced work.

Tr. at 20 (emphasis omitted).

At step four, the ALJ found through the DLI that Plaintiff "was unable to perform any past-relevant work" as an "Insurance broker." Tr. at 24-25 (some emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("59 years old . . . on the [DLI]"), education ("at least a high school education"), work experience, and RFC, the

ALJ relied on the VE's testimony and found that through the DLI, "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," Tr. at 25 (some emphasis and citation omitted), such as a "Dishwasher," a "Hospital cleaner," and an "Auto detailer," Tr. at 26 (some emphasis and citation omitted). The ALJ concluded Plaintiff "was not under a disability . . . from September 8, 2014, . . . through the [DLI]." Tr. at 26 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court

to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff contends the ALJ erred in evaluating his subjective complaints, particularly in light of the ALJ's failure to discuss Plaintiff's wife's testimony about how Plaintiff's impairments affect him. Joint Memo at 20-27. Plaintiff also argues the ALJ relied on certain, more benign, observations and findings in his medical records to the exclusion of observations and findings by his medical providers that establish the severity of his mental disorders. See id. Responding, Defendant acknowledges that the ALJ did not articulate any reasons for (evidently) discrediting Plaintiff's wife's testimony. See id. at 30. Defendant nevertheless asserts the ALJ properly evaluated Plaintiff's subjective complaints on the whole, and the ALJ's findings about the severity of them are supported by substantial evidence. Id. at 27-32. As to Plaintiff's contention about the ALJ excluding a discussion of evidence tending to support

his allegations of severity, Defendant contends that the ALJ was not required to specifically refer to every piece of evidence. See id. at 31, 32.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"In evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers the entire record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his or] her doctors." Belser v. Soc. Sec. Admin., Comm'r, No. 20-12121, 2021 WL 6116639, at *6 (11th Cir. Dec. 27, 2021) (unpublished) (citing 20 C.F.R. §§ 404.1529(c)(1)-(2)). The Regulations in effect at the time of the ALJ's Decision provided that an ALJ "will" also consider other factors related to symptoms such as pain, including:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the

> claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).[5]

Regarding the testimony or reports of third-parties, the Regulation in effect at the time the claim at issue here was filed provided that the Administration would take into account evidence from family members, relatives, and caregivers in determining "the severity of [a claimant's] impairments and how it affects [the claimant's] ability to work." 20 C.F.R. §

---

[5] In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

404.1513(d)(4) (2013); see also Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *6[6]; Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990) (finding the failure of an ALJ to address such statements in the decision is reversible error); but see, e.g., De Olazabal, 579 F. App'x at 832 (if the statements are merely "cumulative of the other evidence in the record," failure to address them may not constitute reversible error). The later version of the same Regulation, effective March 27, 2017, still discusses consideration of "[e]vidence from nonmedical sources," 20 C.F.R. § 404.1513(a)(4) and, as to claims filed prior to March 27, 2017, the Regulations state that the ALJ "generally should explain the weight given to opinions from [non-medical] sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case," 20 C.F.R. § 404.1527(f)(2).

Here, Plaintiff and his wife testified during the first hearing about Plaintiff's impairments and how they affect him. Plaintiff testified about his involvement in a horrific elevator accident in 2011 and the resulting flashbacks, triggers, other symptoms, and limitations he continues to experience. See Tr. at

---

6 Although social security rulings are not binding on courts, they are accorded deference. See De Olazabal v. Soc. Sec. Admin., Comm'r, 579 F. App'x 827, 832 (11th Cir. 2014) (citing Fair v. Shalala, 37 F.3d 1466, 1468-69 (11th Cir. 1994)).

71-81. Plaintiff had to take two breaks in the middle of his testimony to compose himself. Tr. at 78, 81. After the second break, Plaintiff did not return. See Tr. at 81, 91. Instead, Plaintiff's wife testified about the accident and how "[t]hings changed" afterwards. Tr. at 82. Plaintiff's wife described in detail how the accident has affected Plaintiff's daily life, including his blood pressure, his ability to sleep, his ability to engage socially, his need for various medications, his inability to focus at work and eventual need to stop working altogether, his inability to cope, the interruption to their family life, and Plaintiff's struggle with daily activities and driving. Tr. at 82-88. Plaintiff's wife testified she has attended several medical appointments with Plaintiff, and his medications have been adjusted often in an attempt to help his symptoms. Tr. at 88-89. At the end of the first hearing, the ALJ recognized Plaintiff's wife's testimony was "very important" and stated that she would have an opportunity to finish her testimony at the supplemental hearing. Tr. at 90.

During the February 3, 2020 hearing, Plaintiff did not testify and asked to be excused while his wife recounted the rest of his story. Tr. at 36. Plaintiff's wife finished her testimony during this hearing. See Tr. at 37-42. Plaintiff's wife testified that Plaintiff attended a consultative examination (at the ALJ's request) since the last hearing, to which she drove and accompanied him. Tr. at 38. According to Plaintiff's wife, as is often the case in day-to-day life, Plaintiff was easily confused during the examination; he ended up being excused and his

wife answered the questions. Tr. at 39. Plaintiff's wife also expanded during the hearing on how Plaintiff's mental disorders affect his day-to-day life, and about the physical components of his struggles. Tr. at 41-42.

In the Decision, the ALJ recognized that Plaintiff's wife was "[p]resent" for the first hearing and "appeared" at the supplemental hearing. Tr. at 15. In determining that the "severity as demonstrated by the medical evidence of record is incongruous with [Plaintiff's] allegations of disabling disorders," Tr. at 22, however, the ALJ made no reference to Plaintiff's wife's testimony whatsoever, see Tr. at 15-26. Nor did the ALJ discuss Plaintiff's testimony, instead relying on early written reports he submitted to the SSA about how he is affected by his impairments. See Tr. at 21 (citing Exs. 3E, 20E, located at Tr. at 312-18, 381-88). The ALJ also relied on "[o]bservations by [SSA] representatives during initial interviews" of Plaintiff that were done via telephone. Tr. at 23; see also Tr. at 19-20. And, in discussing the medical evidence, the ALJ omitted discussion of the documented severity of some of Plaintiff's mental issues. See Tr. at 19-20, 21-23. Aside from containing symptoms that are more severe than the ALJ discussed in the Decision, the medical records include a treating physician's assistant's ("PA") documentation of Plaintiff's wife reporting to the PA many of the same things about which she testified. Tr. at 440. In addition, the PA himself observed Plaintiff during the appointment "having difficulty following tasks and registering what [the PA

was] saying and then acting upon the task" he was asked to do by the PA. Tr. at 440.

In light of all of these important omissions in the Decision, the ALJ erred in evaluating Plaintiff's allegations of the severity of his impairments. It is not clear whether the ALJ considered Plaintiff's and his wife's testimony, and it is not clear whether the ALJ evaluated its consistency (or lack thereof) with the rest of the evidence of record. Remand is required.

## V. Conclusion

After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Evaluate Plaintiff's and his wife's testimony and the consistency (or lack thereof) with the medical evidence of record;

(B) If appropriate, address the other issue raised by Plaintiff in this appeal; and

(C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Standing Order on Management of Social Security Cases entered on December 7, 2021 in Case No. 3:21-mc-001-TJC (Doc. No. 43, ¶¶ 6, 8).

**DONE AND ORDERED** in Jacksonville, Florida on March 25, 2022.

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record